IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JERMAINE W. SHUTTLESWORTH,

                      Petitioner,

  v.                                                OPINION & ORDER

REED RICHARDSON,                            14-cv-567-jdp

                      Respondent.

---

      Petitioner Jermaine W. Shuttlesworth is currently in the custody of the Wisconsin Department of Corrections at the Stanley Correctional Institution. He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court convictions for second-degree sexual assault of a child and attempted second-degree sexual assault of a child in Kewaunee County Cases Nos. 2011-CF-78 and 2012-CF-1. Dkt. 1. Shuttlesworth's petition is now fully briefed and ready for a decision.

      The primary claim in Shuttlesworth's petition is that he received ineffective assistance of counsel that rendered his guilty plea unknowing and involuntary. He argues that his trial counsel was ineffective because he was not informed about a crime lab report and a sexual assault nurse examiner (SANE) report concerning one of the alleged sexual assaults before he entered his plea. And his appellate counsel, and the Wisconsin courts, denied him his due process rights by withholding the SANE report from him.

      Shuttlesworth raised the ineffective assistance claim on his direct appeal, and the Wisconsin Court of Appeals held that it was without merit. But Shuttlesworth did not actually have the SANE report when made his appeal. He obtained the missing SANE report during briefing of his habeas petition to this court. He now moves the court to consider this

new evidence and to authorize further discovery into the issues that he contends that the SANE report raises. And he presents a new claim: that the prosecutor violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to provide the SANE report to his counsel.

But this raises a problem: no Wisconsin state court has had the opportunity to consider the impact of the SANE report or to consider Shuttlesworth's new *Brady* claim on the merits. Therefore, I cannot fully review these issues on Shuttlesworth's habeas petition. I will consider the new evidence only to determine whether to stay Shuttlesworth's habeas petition to allow him to attempt to exhaust any state-court remedies that he might have as a result of the newly found SANE report. Shuttlesworth could try to present the SANE report and his new *Brady* claim on a post-conviction motion in state court. But such a motion would be plainly meritless because the SANE report is not exculpatory, for reasons I will explain in this opinion. Thus, there is no reason to stay this case while Shuttlesworth exhausts a new claim in a Wisconsin court. For the same reason, I will not authorize further discovery.

After considering the parties' submissions, I conclude that Shuttlesworth has failed to show that the Wisconsin Court of Appeals unreasonably applied federal law regarding ineffective assistance of counsel or due process. I will deny his habeas petition.

FACTS

The court draws the following facts from the petition, briefs, and state court records.

In Kewaunee County Case No. 2012-CF-1, Shuttlesworth was charged with exposing his genitals to a child, second-degree sexual assault of a child, and attempted second-degree sexual assault of a child. The attempted sexual assault charge arose out of an incident that

occurred in September 2011. JH, a 13-year-old girl, was at the home of her friend AN's mother. JH alleged that Shuttlesworth was drinking at the kitchen table and, throughout the evening, made sexual comments and grabbed JH's body. At one point, he sat on top of JH, grabbed her buttocks, and tried to pull her pants down. Later, JH and AN went to bed. JH came back to the kitchen for water. Shuttlesworth grabbed her wrist, pulled out his penis, and asked her to kiss it.

Shuttlesworth's habeas petition focuses on his conviction in Kewaunee County Case No. 2011-CF-78. In that case, Shuttlesworth was charged with second-degree sexual assault of a child arising out of events occurring in November 2011. HCN, a fourteen-year-old girl, was at home with her sister, her mother, and Shuttlesworth. HCN alleged that, after her sister and mother went to bed, Shuttlesworth asked HCN questions about her sexual history, grabbed her face, kissed her, pushed her onto a couch, pulled off her pants and underwear, and inserted his penis into her vagina as she tried to kick him away. Shuttlesworth allowed HCN to get up when she said she wanted to go to bed, but told her not to tell anyone about what had happened.

After school the next day, HCN went to the hospital where she was examined. (This exam produced the SANE report at issue now.) The state crime lab tested evidence collected during this exam for DNA. The crime lab analyst obtained a male DNA profile from dried secretion swabs from HCN's neck and found a "match" (that is, an unconfirmed investigative lead) in the Wisconsin DNA Databank for Jermaine W. Shuttlesworth. The crime lab analyst also found male DNA on the vaginal swabs and rectal swabs collected during the exam, but the amount of DNA available was insufficient to provide a match to a specific individual. The crime lab analyst did not find semen on any of the evidence.

3

Shuttlesworth retained a lawyer, Adam Walsh, to represent him in both cases. Walsh received a copy of the state crime lab report from the state in discovery. Walsh did not receive a copy of the SANE report. Walsh explained the charges to Shuttlesworth and said that Shuttlesworth could be convicted of second-degree sexual assault of a child if the prosecution proved that he had either sexual intercourse or sexual contact with HCN.[1] Pursuant to a plea agreement, Shuttlesworth pled guilty to second-degree sexual assault of a child in Case No. 2011-CF-78 and attempted second-degree sexual assault of a child in Case No. 2012-CF-1. The remaining counts in the 2012 case were dismissed but read in. The circuit court sentenced Shuttlesworth to concurrent sentences of 10 years of confinement and 15 years of extended supervision.

On direct appeal, Shuttlesworth's appointed counsel filed a no-merit report, which Shuttlesworth contested. Two of his arguments are at issue in this petition. First, Shuttlesworth argued that the crime lab report proved that Shuttlesworth did not have sexual intercourse with HCN, and that Walsh performed deficiently when he did not review the crime lab report or disclose it to Shuttlesworth, rendering Shuttlesworth's guilty plea involuntary and unknowing. The Wisconsin Court of Appeals concluded that even if Walsh had performed deficiently by failing to review or provide Shuttlesworth with a copy of the crime lab report, there was no reasonable probability that Shuttlesworth would have refused the plea agreement and insisted on going to trial. Dkt. 10-10. Even if the crime lab report showed that Shuttlesworth did not have sexual intercourse with HCN, the prosecution

---

[1] Walsh's affidavit to this effect was presented to the Wisconsin Court of Appeals in support of Shuttlesworth's appellate counsel's no-merit report. *See* Dkt. 10-10, at 5. The appeals court accepted Walsh's assertions as true because Shuttlesworth did not dispute them. *Id.* Shuttlesworth has not disputed them in his federal habeas proceedings, either, and so this court will accept them as true.

4

needed to prove only that Shuttlesworth engaged in sexual *contact* with HCN. Shuttlesworth knew that the prosecution did not need to prove sexual intercourse, so the appeals court concluded that there was no reasonable probability that Shuttlesworth would have declined to plead guilty even if he had reviewed the crime lab report.

Second, Shuttlesworth argued that the Wisconsin Court of Appeals, his trial counsel, and his appellate counsel violated his due process rights by denying him access to the SANE report, which also would have proven he did not have sexual intercourse with HCN. The appeals court noted that Shuttlesworth failed to demonstrate that a SANE report existed: the report was not in the court record or trial counsel's file. But the appeals court also concluded that even if the SANE report did exist, and even if the report proved that Shuttlesworth did not have sexual intercourse with HCN, Shuttlesworth had "no arguably meritorious issue" arising from the alleged denial of the report. Dkt. 10-10, at 8. Again the reason was that such a report would not have saved him from conviction for sexual *contact* with a minor. As with the crime lab report, the appeals court concluded that there was no reasonable probability that Shuttlesworth would have changed his plea even if he had a SANE report showing that he did not have intercourse with HCN. The appeals court upheld Shuttlesworth's conviction. The Wisconsin Supreme Court denied Shuttlesworth's petition for review.

Shuttlesworth seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. During the pendency of his petition, Shuttlesworth obtained the SANE report and an accompanying police report in April 2016 through an open records request to the Luxemburg Police Department. Shuttlesworth asks the court to consider this new evidence in deciding his habeas petition.

ANALYSIS

A.  **Preliminary matters**

I will start with the new evidence—the SANE report and accompanying police report. Shuttlesworth moves the court to expand the record to include this new evidence, Dkt. 20, and he argues in his reply brief, Dkt. 17, that he did not have access to the SANE report because of his trial counsel's ineffective assistance or the prosecution's failure to disclose the report in discovery. Before turning to the merits of Shuttlesworth's claims, I must determine what to do with this new evidence. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011). In other words, my task under § 2254 is to review the reasonableness of the decision of the Wisconsin Court of Appeals, and in doing so, I am limited to the evidence that was before that court. I cannot consider the new evidence because the court of appeals did not have this evidence when it adjudicated Shuttlesworth's ineffective assistance of counsel claim.

One of the essential principles underlying § 2254 is that state prisoners must give the state the first opportunity to correct its errors. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Thus, in most cases, the federal court cannot consider an issue on a habeas petition until it has been decided by the state court. In Shuttlesworth's case, this means that he would have to present the issues raised by the SANE report, including his new claim of a *Brady* violation, in a post-conviction motion in state court before I could consider them on a federal habeas petition.

Shuttlesworth has not raised the new evidence or his new *Brady* claim in a Wisconsin court, and so he has not exhausted his state court remedies. The failure to exhaust state court remedies usually bars habeas relief. 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."). Federal courts have the option of staying a habeas petition to allow the petitioner to pursue an unexhausted claim in state court, but only when the court finds "there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). But "even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Id*. (citing 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")).

I will grant Shuttlesworth's motion to expand the record, Dkt. 20, but only for the purpose of determining whether to stay Shuttlesworth's petition to allow him to exhaust his state court remedies. I will also grant respondent's motion, Dkt. 21, for leave to file a response to petitioner's reply brief.

Shuttlesworth did not raise the SANE report and his new *Brady* claim in the Wisconsin courts. I am not fully persuaded that he has shown good cause failing to do so. In his appeal, he argued that his trial and appellate counsel had a copy of the SANE report, but that they refused to give him a copy of it. Dkt. 10-7, at 3. Shuttlesworth's counsel told him, during the course of his appeal, that they did not have a copies of the SANE report. Dkt. 10-10, at 8. Shuttlesworth insisted to the court of appeals that his counsel was lying.

Shuttlesworth obtained a copy of the SANE report after submitting an open records request mid-way through briefing on his habeas petition. Now, in his reply in support of his habeas petition, he contends that if his counsel did not have copies of the SANE report, then the prosecution must have withheld it. Dkt. 17, at 12. But Shuttlesworth does not explain why he did not submit an open records request for the SANE report during his state court proceedings. I will assume that Shuttlesworth could show that he was reasonably diligent in his quest for the SANE report. But sooner or later, whether to a Wisconsin court or to a federal court on habeas review, he will have to show how he was prejudiced by not having the SANE report before he pleaded. In other words, he will have to show that the SANE report is actually exculpatory. I conclude that such a claim would be meritless.

"Due process requires that a guilty plea, to be valid, be made voluntarily, intelligently and knowingly. A plea is voluntary when it is not induced by threats or misrepresentations, and the defendant is made aware of the direct consequences of the plea. A plea is knowing and intelligent when the defendant is competent, aware of the charges and advised by competent counsel." *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002) (citations omitted).

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. To establish a *Brady* violation, a defendant must demonstrate (1) that the prosecutor willfully or inadvertently suppressed evidence; (2) that the evidence was favorable to the defendant, either because it was exculpatory or because it has impeachment value; and (3) the evidence was material such that

8

prejudice ensued, that is, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995); *United States v. Bagley*, 473 U.S. 667, 682 (1985).

It is uncertain whether *Brady* applies outside the trial context. In *United States v. Ruiz*, 536 U.S. 622, 630 (2002), the Supreme Court held that the Due Process Clause does not require the government to disclose impeachment information before the entry of a criminal defendant's guilty plea. The Seventh Circuit has suggested that the government might still be required to disclose exculpatory evidence of a criminal defendant's factual innocence under *Ruiz* before he enters a guilty plea, but has not ruled directly on the issue. *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003). For the purpose of this petition, I will assume that Shuttlesworth could pursue a *Brady* claim to prove that he did not enter his guilty plea knowingly and voluntarily. But his claim is still plainly meritless because the SANE report and accompanying police report are not exculpatory because they do not negate an element of the crime.

The SANE report does not contradict HCN's allegations of sexual assault. Shuttlesworth is correct that, according to the SANE report, no semen was found during the exam. Shuttlesworth contends that HCN reported that he had penetrated her with force and ejaculated, so, according to Shuttlesworth, the absence of semen is telling. But HCN did not report that Shuttlesworth ejaculated: the SANE report actually says that HCN did not know whether Shuttlesworth ejaculated. The SANE report notes redness near HCN's vagina, which, as the report notes, is consistent with HCN's report. And HCN was examined the day after the assault, and after she had showered. So the lack of semen does not negate that Shuttlesworth had intercourse with the victim. More fundamentally, intercourse is not a

necessary element of the crime: as his counsel explained to him before his plea, he could be convicted on the basis of sexual contact without intercourse. The SANE report, especially in combination with the crime lab report, provides ample evidence consistent with Shuttlesworth's sexual contact with the minor victim.

Because the SANE report is not exculpatory, the prosecution did not have a constitutional duty to disclose it. And even if the report had been available to defense counsel, no competent counsel would have advised Shuttlesworth to go to trial, which would have exposed him to far greater penalties.[2] Shuttlesworth's *Brady* claim based on the SANE report is plainly meritless, as would be any claim based on the failure to provide Shuttlesworth with the SANE report before his plea. I will not stay his habeas petition to allow him the opportunity to pursue such claims in the Wisconsin state courts.

The final preliminary matter is Shuttlesworth's motion for additional discovery. Dkt. 19. Shuttlesworth asks to (1) depose the state crime lab DNA analyst, the people who prepared the SANE report, HCN, and HCN's family members; (2) obtain documents from the county social service agency's investigation of the alleged sexual assault; and (3) obtain an expert review of the SANE report and crime lab report by a child psychologist. Rule 6(a) allows courts to authorize a habeas petitioner to obtain discovery when the petitioner makes "a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation" and shows "'good cause' for the discovery." *Hubanks v. Frank*, 392 F.3d 926, 933

---

[2] If Shuttlesworth had been convicted on all counts in both cases at trial, he would have faced a maximum sentence of 64 years confinement and 39.5 years of extended supervision. *See* Dkt. 10-1; Wis. Stat. §§ 973.01(2), 939.32(1m)(b), 939.50(3). On the single charge concerning the assault of HCN, Shuttlesworth faced a maximum of 25 years confinement and 15 years confinement. *Id.* The plea offer that he accepted resulted in a sentence of 10 years confinement and 15 years of extended supervision. *See* Dkt. 10-1.

(7th Cir. 2004). "Good cause, however, cannot exist where the facts alleged do not provide a basis for relief." *Id.*

Shuttlesworth's request for discovery is based on the idea that the SANE report provides evidence of his innocence. Shuttlesworth does not indicate how any other evidence he would obtain through discovery would bolster his claim. There is no good cause for discovery concerning any claim based on the failure to disclose the SANE report. And *Pinholster* bars me from considering any new evidence when analyzing the Wisconsin Court of Appeals' decision denying Shuttlesworth's original claims for relief under § 2254(d)(1). I will deny his motion for discovery.

B. Review under § 2254(d)(1)

I now turn to the claims Shuttlesworth originally raised in his petition. Shuttlesworth contends that he is entitled to habeas relief because his guilty plea was unknowing and involuntary because he did not know about a crime lab report and a SANE report concerning the alleged sexual assault of HCN before entering his plea. He contends that he was deprived of the effective assistance of counsel because trial counsel failed to provide Shuttlesworth with these reports or alternatively, that the state did not provide Shuttlesworth's trial counsel with the SANE report in violation of Shuttlesworth's right to due process.

Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

11

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Shuttlesworth contends that the state courts unreasonably applied Supreme Court precedent concerning ineffective assistance of counsel and due process violations. The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court opinions "but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002). The relevant decision in this case is the Wisconsin Court of Appeals' opinion accepting Shuttlesworth's appellate counsel's no-merits report and affirming his conviction. *See Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006) ("The relevant state court decision is that of the last state court to address the claim on the merits.").

The "unreasonable application" standard places a high burden on Shuttlesworth. *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013) ("This standard . . . is 'difficult to meet.'" (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011))). "Clearly established law" must be set out in the holdings of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). "[A]n 'unreasonable application of' of those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Shuttlesworth claims his trial counsel failed to review the state lab report and SANE report or show the reports to Shuttlesworth. The Wisconsin Court of Appeals identified the

controlling two-part test for reviewing the ineffective assistance of counsel claims. Dkt. 10-10, at 6. First, Shuttlesworth needed to show deficient performance, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, Shuttlesworth had to demonstrate that the deficient performance caused him prejudice, which requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When the defendant has pleaded guilty, as Shuttlesworth has, he must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty but would have insisted on going to trial. *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003). The prejudice inquiry in a case involving the failure to obtain evidence before entry of a guilty plea "will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

"[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). This standard is "doubly deferential" on habeas corpus review. *Id.*; *see also Richter*, 562 U.S. at 105. Thus, my task is not to independently apply the *Strickland* analysis to the facts of Shuttlesworth's case. Instead, I must determine whether the Wisconsin Court of Appeals reasonably applied controlling federal law by concluding that even if Shuttlesworth's counsel's actions were deficient, they did not prejudice Shuttlesworth.

The appeals court denied Shuttlesworth's ineffective assistance of counsel claim. It assumed that Shuttlesworth's counsel did not show him these reports and that such a failure constituted deficient performance. It concluded that there was not a reasonable probability that Shuttlesworth would have changed his plea had he reviewed the state crime lab report and the hypothetical SANE report: the state crime lab report supported the prosecution's case. And even if the reports proved that there was no intercourse with HCN, as Shuttlesworth argued, the reports would have supported Shuttlesworth's conviction under a sexual contact theory and would not have convinced Shuttlesworth to change his plea.

The appeals court's analysis is not objectively unreasonable. The crime lab report did not help Shuttlesworth. Instead, it was consistent with HCN's allegations. The report indicated that DNA had been found on HCN's neck that matched Shuttlesworth's DNA, which supports HCN's allegations that Shuttlesworth grabbed her face and kissed her. The report indicated that male DNA was detected on vaginal and rectal swabs, which is consistent with HCN's allegations. Even if the SANE report had proved that Shuttlesworth did not succeed in inserting his penis in HCN's vagina, it supported HCN's allegations of sexual contact with HCN, which was all that the prosecution needed to prove. *See* Wis. Stat. § 948.02(2) (defining second-degree sexual assault as "sexual contact or sexual intercourse with a person who has not attained the age of 16 years"). A competent attorney would not have advised Shuttlesworth to turn down the plea deal in favor of trial in light of such evidence, so Shuttlesworth's ineffective assistance claim fails.

Shuttlesworth also brings a due process claim. He alleges that the state courts violated his right to due process by withholding the SANE report, which also rendered his plea involuntary and unknowing. "To survive a due process challenge, a plea must be knowing,

14

voluntary, and intelligently entered." *Warren v. Baenen*, 712 F.3d 1090, 1102 (7th Cir. 2013). To enter a knowing, voluntary, and intelligent plea, Shuttlesworth must have been aware of the plea's direct consequences, had notice of the true nature of the charges against him, and understood the law in relation to the facts. *Virsnieks v. Smith*, 521 F.3d 707, 714 (7th Cir. 2008).

The appeals court did not spell out its due process analysis in detail. It only reasoned that even if, as Shuttlesworth contended, the SANE report existed and proved that Shuttlesworth did not have sexual intercourse with HCN, the report still would have provided a factual basis for Shuttlesworth's conviction under a "sexual contact" theory. Shuttlesworth was aware that a showing of sexual contact would be enough to convict him of second-degree sexual assault of a child. The appeals court found "no arguably meritorious challenge to the knowing and voluntary nature of Shuttlesworth's plea." Dkt. 10-10, at 8.

Although the appeals court's analysis was succinct, it was not objectively unreasonable. Shuttlesworth was aware that the charges against him required a showing of only sexual *contact*. A SANE report proving that Shuttlesworth did not have sexual intercourse with HCN would not have altered Shuttlesworth's understanding of the law in relation to the facts. Such a report would not have changed a reasonable defendant's calculus regarding the plea deal. The appeals court's denial of Shuttlesworth's due process claim was not unreasonable.

## C. Certificate of appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. A certificate of appealability will not issue unless petitioner makes "a substantial showing of the denial of a

15

constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Although the rule allows me to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, I conclude that Shuttlesworth has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because reasonable jurists would not otherwise debate whether a different result was required, I will not issue Shuttlesworth a certificate of appealability.

ORDER

IT IS ORDERED that:

1. Petitioner Jermaine W. Shuttlesworth's motion to expand the record, Dkt. 20, is GRANTED for the limited purposes discussed in this opinion.

2. Respondent's motion for leave to file a response to petitioner's reply brief, Dkt. 21, is GRANTED.

3. Petitioner's motion for discovery, Dkt. 19, is DENIED.

4. Petitioner's petition for habeas corpus under 28 U.S.C. § 2254, Dkt. 1, is DENIED, and this case is DISMISSED. The clerk of court is directed to enter judgment for respondent and close this case.

5. Petitioner's request for a certificate of appealability is DENIED. If petitioner wishes he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Entered November 10, 2016.

                          BY THE COURT:

                          /s/

                          _____
                          JAMES D. PETERSON
                          District Judge